**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**
John Joseph Moakley U.S. Courthouse

**Consolidated appeals from the four interlocutory orders that respectively allowed University Defendants' March 30, 2020 motion to modify August 28, 2019 order to prohibit Plaintiff from using a pseudonym; and denied Plaintiff's November 1, 2022 motion to reconsider, January 30, 2023 motion under Rules 60(b)(1) and 60(b)(6), and January 31, 2023 motion under Rule 60(b)(6).**
Issued on September 12, 2022, December 29, 2022, February 1, 2023, and February 2, 2023.
In the case 3:19-cv-30056-MGM filed on April 22, 2019 at the
Springfield (Western) Divisional Office of the
United States District Court for the
District of Massachusetts.

**USCA Cases Nos. 23-1118, 23-1119, 23-1142, and 23-1143**

**Jane Doe,**
*Plaintiff-Appellant,*

**v.**

**UMass-Amherst and twelve other defendants,**
*Defendants-Appellees.*

**Dated October 31, 2023**

**MOTION TO SUBSTITUTE PROPOSED AMENDED EMERGENCY**
**MOTION FOR OCTOBER 28, 2023 EMERGENCY MOTION**

On October 28, 2023, Appellant mailed to this Court an emergency motion

which she had very quickly drafted. That emergency motion was submitted as a

result of the latest adverse actions in a recent series of new threats and retaliation

that culminated on October 24, 2023 (for the retribution) and October 27, 2023 (for the new threats). (Because of those most recent acts, since last week, Appellant has found herself completely unsettled, once again, and destabilized to a point where she can no longer keep working at the brief that was expected of her, in the appellate proceedings at hand, on or before October 30, 2023.)

Subsequently, determined to make this appeal case progress despite the numerous undue new hurdles that keep being intentionally added on her already extremely challenging path, Appellant decided to write and mail as fast as she could that October 28, 2023 emergency motion, which was received by this Court's Clerk's Office on October 30, 2023. However, because Appellant needed that this document arrive on or before her deadline to submit her brief, she did not manage to properly proofread and/or edit it before it was time to mail it (the post-office in Appellant's living area closes at 2:00 pm on Saturdays). Nor could she make the thorough research she would have otherwise tried to perform.

Given that Appellant, who has no legal training and is pro se, strives to be knowledgeable about the applicable law (as demanded by the District Judge of the Springfield divisional office of the USDC for the District of Massachusetts in his May 3, 2017 standing order regarding courtroom opportunities for relatively

inexperienced attorneys)[1] under the purview of each of the documents that she has to write while self-representing, but has neither all nor the most adequate materials indispensable to perform a consequential legal search in a reasonable amount of time, she now moves the Court to substitute the amended emergency motion proposed as Attachment #01 to the present request, for the initial emergency motion that she mailed on October 28, 2023. The enclosed proposed amended version of this October 28, 2023 emergency motion should convey more clearly Appellant's argument and the result sought thanks to the corrections she made as well as the supplemental information she inserted. Incidentally, Appellant has not yet achieved her prospective second emergency motion, the one to expand the record on appeal; but she would like the Court to be mindful that she intends to mail that other emergency motion in the slightest delay she can.

Wherefore, Appellant moves the Court for the allowance of the substitution which she seeks via the present request.

Respectfully submitted,
/s/ Jane Doe

---

[1] This document is directly viewable via the portal of the United States District Court for the Massachusetts District: https://www.mad.uscourts.gov/springfield/pdf/mastroianni/Standing%20Order%20on%20Courtroom%20Opportunities%20for%20Inexperienced%20Attorneys.pdf.

## Certificate of Service

On October 31, 2023, Appellant hereby certifies that on the same day she served the instant motion and its single attachment (Attachment #01) by mailing printed copies of these documents, via U.S.P.S. regular mail to the Clerk's office of the U.S. Court of Appeals for the First Circuit located at the John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2500, Boston, MA 02210. Subsequently, Appellant emailed copies of the corresponding digital files to the opposing parties' attorneys, namely, Atty. Mark Johnson, Assistant Attorney General Hannah Vail, and Atty. Deborah Ecker.

Respectfully submitted,
/s/ Jane Doe

Encl.: As Attachment #01, proposed amended October 28, 2023 emergency motion to stay October 30, 2023 opening briefing deadline, dated October 31, 2023.

# ATTACHMENT #01

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT
John Joseph Moakley U.S. Courthouse

**Consolidated appeals from the four interlocutory orders that respectively allowed University Defendants' March 30, 2020 motion to modify August 28, 2019 order to prohibit Plaintiff from using a pseudonym; and denied Plaintiff's November 1, 2022 motion to reconsider, January 30, 2023 motion under Rules 60(b)(1) and 60(b)(6), and January 31, 2023 motion under Rule 60(b)(6).**
Issued on September 12, 2022, December 29, 2022, February 1, 2023, and February 2, 2023.
In the case 3:19-cv-30056-MGM filed on April 22, 2019 at the
Springfield (Western) Divisional Office of the
United States District Court for the
District of Massachusetts.

**USCA Cases Nos. 23-1118, 23-1119, 23-1142, and 23-1143**

**Jane Doe,**
*Plaintiff-Appellant*,

**v.**

**UMass-Amherst and twelve other defendants,**
*Defendants-Appellees*.

**Dated October 31, 2023**

## AMENDED EMERGENCY MOTION TO STAY
## OCTOBER 30, 2023 OPENING BRIEF FILING DEADLINE
## UNTIL RESOLUTION OF PROSPECTIVE EMERGENCY MOTION TO
## EXPAND RECORD WITH CURRENT NEW EVIDENCE

While attempting to present for review the four issues at the crux of the

resultant four consolidated cases before this Court, i.e., 28-1118, 23-1119, 23-1142

and 23-1143, Appellant has been on the receiving end of a recent new series of threats and retaliation, directly resulting from her federal civil action commenced on April 22, 2019 (i.e., over 4.5 years ago), from which the aforesaid consolidated appeal cases originate. Appellant believes that these new threats and harms are *unusually* severe, based on reasonable fears, and vividly illustrate the extreme vulnerability to which her most recent submissions refer—i.e., those made after the district court's September 12, 2022 order to prohibit her continued use of a pseudonym (Dkt. No. 218), namely, her November 1, 2022 motion to reconsider (Dkt. No. 236 that was amended on November 7, 2022; see attachment to Dkt. No. 239), and her January 31, 2023 motion under Rule 60(b)(6) to adduce new evidence of potential severe harms (Dkt. No. 271), in conjunction with Appellant's four submissions to the same court to try to expedite the issuance of a decision on the merits of her case (Dkt. Nos. 206, 215, 219, 298). Moreover, these are *actual* harms, which have occurred within the moderately small circle of those who already know or have discovered Appellant's identity and are aware of both her litigation against UMass-Amherst and her immigration issues; and thus which underscores that the full public disclosure of Appellant's identity could be catastrophic for her.

Although Appellant does not know[1] whether this Court has already

---

[1] Appellant could not research much about this aspect due to the current severe threats and reprisals at issue in her prospective motion to expand record on appeal. Moreover, Appellant has no legal training and has been looking for competent legal representation in vain for nearly nine years. Recently, she tried again: one attempt at the district court itself (Dkt. No. 295), pursuant to Title 28 U.S.C. § 1915(e)(1). (This type of request is also encouraged on the USDC

established a standard to expand the record on appeal and thus whether her new evidence would be receivable, it is Appellant's belief that she should try to expand the record relevant to the major issue to be presented for review by this Court, at this same forum, instead of bringing it first to the district court, for the following reasons.

First, seeking an accord[2] with the University Defendants—i.e., those ones among the 13 defendants in Appellant's civil case who have been seeking to overturn the district court's allowance of Appellant's ex-parte request to proceed under a pseudonym—to try to move the district court to make findings in this case rather than protracting the pseudonymity issue, would otherwise be rendered futile, because Appellant's recent new evidence relies on the conduct of unnamed-in-Appellant's-civil-complaint employees or students (former or current) of UMass and other public servants of the Commonwealth (of which UMass is an arm), who know Appellant's identity, that she has sued UMass-Amherst, and that her immigration

---

for the District of Massachusetts' website (see https://www.mad.uscourts.gov/pro-se/legal-representation.htm.) However, this effort was futile and asking for review of the reason extended to justify the denial to appoint pro bono services to assist Appellant (i.e., "Although the court may request an attorney represent a plaintiff pro bono in limited circumstances, Plaintiff has not shown the type of exceptional circumstances which justify such a request at this time[;]" Dkt. No. 298) on which Appellant strongly disagrees, is a recourse of which Appellant could not avail herself due to the five appeal proceedings she had already initiated; and more than ever now, given the recent series of severe retaliation that she has been facing only for trying to procure the legal resources indispensable, but unaffordable to her, to find the legal information relevant to her needs. Another attempt, this time at a legal clinic seemingly funded by private donors, yielded no favorable results and even frightened Appellant after the director of said legal clinic disclosed that she is also the chair of the Commonwealth's Standing Committee on Pro Bono Legal Services—a circumstance raising a direct conflict of interest with Appellant and suggesting that the Commonwealth decides even who can access pro bono services at supposedly-private organizations.

[2] See Doe v. Solera Cap. LLC, No. 1:18-cv-01769-ER, 2020 WL 11027792, at *1 (S.D.N.Y. December 16, 2020) (After the parties jointly moved the district court for an indicative ruling pursuant to F.R.C.P. 62.1 regarding two denial orders related to the plaintiff's motion to continue to proceed anonymously and her motion to reconsider the denial to do so, while the anonymity issue was before the Second Circuit, the district court indicated its willingness to accept a limited remand from the Second Circuit so that it might vacate both orders, which it effectively did, after the remand was allowed by the Second Circuit, by granting the parties' joint request to vacate.).

status is at best "problematic."[3] It goes indeed without saying that no defendant would agree to requesting that the district court make findings about evidence that is against them (which in the first place is most likely the reason why here the University Defendants did not seek an oral argument and/or an evidentiary hearing on their March 30, 2020 motion to modify order; Dkt. No. 101).

In addition, the district court itself has already expressed three opinions (Dkt. Nos. 218, 245, and 278) from which a reasonable mind can draw the rational inference that whatever Appellant can endure as threats of potential serious harms and/or as severe retaliation,[4] while her civil proceedings are pending, will most likely not be found by the district court as carrying sufficient weight to reverse its decision to revoke pseudonymity, as the analysis that Appellant intends to provide in her upcoming emergency motion to expand the record on appeal, will demonstrate.[5,6]

---

[3] *See Int'l Refugee Assistance Project v. Trump*, 8:17-cv-00361-TDC, 2017 WL 818255, at *2 (D.Md. March 1, 2017).

[4] Appellant was able to unearth only one decision where a district court reconsidered its denial of a motion to proceed pseudonymously in favor of the movant. However, the reconsideration motion invoked as exceptional circumstances post-order-denying-pseudonymity mental harm attested by medical professionals and the prediction by the same providers that revelation of plaintiff's identity would likely "cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life." *See Doe v. Smith*, 105 F. Supp. 2d 40, 43 (E.D.N.Y. 1999). That decision was questioned and not followed in a similar case litigated 20 years later where the district court declined to "speculate regarding 'the nature, level, or intensity of [the plaintiff's] mental injury.'" *See Doe v. Solera Cap. LLC*, No. 1:18-cv-1769-ER, 2019 WL 1437520, at *4 (S.D.N.Y. March 31, 2019) (quoting *supra Doe v. Smith*, 105 F. Supp. at 42). Here, the circumstances are completely distinct and do not involve either harm or self-harm caused by denial order, but a risk to endure one of the most severe harms (i.e., not being able to pursue a litigation that has started over 4.5 years ago) as well as severe retaliation by third parties unnamed in the complaint but employed by one of the defendants, for some, directly; and for others, indirectly, since UMass-Amherst, by extension, is the Commonwealth.

[5] Appellant could not send this emergency motion for a stay simultaneously with what she refers to in this motion's caption as her prospective emergency motion to expand the record on appeal with current new evidence because the latest act of retaliation occurred on October 24, 2023 and the latest threat on October 27, 2023, which did not give enough time to Appellant to do so.

[6] Appellant is not seeking an amendment of her complaint, but just to report recent new threats and retaliation that justify her need to continue litigating her civil complaint under a pseudonym. In fact, Appellant has a motion for leave to file a fourth amended complaint that has been pending before the district court since June 14, 2023. This motion

Therefore, attempting to bring this new evidence before the district court first, would be in vain. Moreover, in all likelihood, Appellant would be denied a hearing. (Appellant has never obtained one even when she requested an oral argument while there existed apparent solid grounds for such a grant; besides, remarkably, the defendants have NEVER sought to be heard on their respective motions to dismiss, motion to modify order, and motion to set aside default whereas Appellant has.[7]) In fine, Appellant would most probably have to file another appeal that would have to be consolidated with her current consolidated appeal, which in turn would protract these appellate proceedings while prolonging the apparent[8] stay of her civil action, if Appellant manages to stay alive until then.

The seriousness and gravity of the new threatened harms and retaliation call

---

became nearly inevitable from the moment that the district court set aside the default entered by the court's clerk against the only defendant who had not responded to Appellant's complaint after having been served with a summons. As stated by the district court itself: it had delayed its decision on the two long-pending motions to dismiss to allow this defendant to file what it suspected would be a motion to dismiss. Because the district court has already warned Appellant that it does not allow a plaintiff to file a curative motion to amend after ruling on a motion to dismiss, it is possible to deduce that the district court obviously was aware that there was a strong probability for Appellant to seek to amend a fourth time her complaint once a third and last motion to dismiss would finally be filed.

[7] Those are the very few motions of interest—except a few motions to extend time—that have been filed by the defendants to date in this case which commenced on April 22, 2019. The total number is extremely low by comparison with the high number of motions that Appellant has had to submit so far. Moreover, the defendants have attached no evidence, no relevant supporting documents, no declarations, and no affidavits, to any of their motions (not even to that to set aside default!); and their oppositions to Appellant's motions, when they filed one (usually, the district court does not wait to see whether they will file an opposition) are very laconic (*see e.g.*, Dkt. Nos. 242, 351, 352, and 353). Additionally, the defendants have NEVER filed a reply to any of Appellant's oppositions.

[8] Appellant emphasizes that she has not requested a stay of her underlying federal litigation. In fact, for nearly two years, she has been begging the district court for decisions on the merits of her claims, without obtaining any clear response as to whether the district court truly intends to do so. In the latter regard, Appellant's emergency motion for a clear answer as to whether the court intends to decide the defendants' four critical pending motions, filed on March 22, 2022 (Dkt. No. 215), was ruled upon on March 28, 2023 (Dkt. No. 329), i.e., over a year after its submission; and the corresponding order did not address all of the four motions that Appellant was referring to, but only two of them. Moreover, since June 14, 2023, Appellant has come back to square one: once again, four critical motions are pending, namely three motions to dismiss (two for over two years, Dkt. Nos. 176 and178; and the other for over 6 months, Dkt. No. 333) and one motion to amend for the fourth time (Dkt. No. 350).

for immediate action by Appellant because the latter are contemporaneous to these appellate proceedings while being highly relevant to the primary issue (which is the object of the case 23-1118) of which Appellant seeks a review by this Court: the abrogation by the district court, nearly 2.5 years after one class of defendants in the underlying complaint filed on March 30, 2020 what amounts to an opposition to the district court's initial grant, made ex-parte on August 28, 2019, of the authorization to litigate by pseudonym sought by Appellant around the time when she started her civil action on April 22, 2019.

Generally, when a plaintiff in a civil proceeding needs pseudonymous status, on or around the date when their action commences, they move the district court, ex-parte, for the grant of such a relief. Depending on the judge in the judicial district of interest, the merits of a plaintiff's motion to litigate anonymously are determined, either ex-parte, i.e., before the defendants appear in the case, or after the defendants had an opportunity to respond or object (a defendant may not oppose the plaintiff's motion), but rather early to get a case to move quickly. In the event that leave to litigate pseudonymously is given, because there is no guarantee that a litigant may proceed in such a capacity throughout the entire case, as reminded by this Court in its second precedent on the issue of pseudonymity, *Doe v. Mass. Inst. of Tech.*,[9]

---

[9] *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022).

issued on August 24, 2022 (the first being *Does 1-3 v. Mills*, [10] issued on July 7, 2022; and the third, *Doe v. Town of Lisbon*,[11] issued on August 16, 2023), "an order granting pseudonymity should be periodically reevaluated if and when circumstances change."[12] For this reason, a district court's order allowing a plaintiff to proceed under a pseudonym, usually, comes with a warning to the effect of "[t]he allowance is WITHOUT PREJUDICE to further review either on motion of a party or intervenor or sua sponte by the Court upon notice to the Plaintiff,"[13] (emphasis in original); or "[t]he Court is not ruling that such will be appropriate if and when this matter proceeds to trial. If the case proceeds to trial, the Court will revisit this matter with counsel for the parties at any pretrial conference[.]"[14]

It seems to Appellant that by virtue of the acknowledgment that "an order denying a litigant's motion to proceed by pseudonym is immediately appealable

---

[10] *See Doe v. Mills*, 39 F.4th 20 (1st Cir. 2022). However, this first precedent was superseded by *supra Doe v. Mass. Ins. of Tech.* because the change of circumstance evoked in the former at 26 can no longer occur in accordance with the holding in the latter at 77 that "courts tasked with resolving pseudonymity motions must be afforded the anonymous party's true name under seal[,]" quoted by *Jones as next friend of Jimmy v. Massachusetts Interscholastic Athletic Ass'n*, No. 1:22-CV-11426-AK, 2022 WL 6819608, at *1 (D.Mass. Oct. 11, 2022), other type of issue appealed dismissed, No. 22-1784, 2022 WL 19520186 (1st Cir. 2022); and *Doe v. The Federal Republic of Germany et al.*, No. 1:23-cv-06395-VS-BGS, 2023 WL 6785813, at *11 (S.D.N.Y. Oct. 13, 2023).

[11] *See Doe v. Town of Lisbon*, 78 F.4th 38 (1st Cir. 2023).

[12] *See supra Doe v. Massachusetts Inst. of Tech.*, 46 F.4th at 73 (1st Cir. 2022) (citing *Lawson v. Rubin*, No. 1:17-cv-06404-BMC-SMG, 2019 WL 5291205, at *2-3 (E.D.N.Y. Oct. 18, 2019) (explaining why pseudonymity was appropriate in pretrial stages of sexual assault litigation but not during trial); and comparing with *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (referring to arguments that "use of pseudonyms would prejudice the jury" and impair opposing party's ability to impeach witnesses (citing *James v. Jacobson*, 6 F.3d 233, 240-41 (4th Cir. 1993))).

[13] *See Doe v. Stonehill College, Inc.*, No. 1:20-cv-10468-LTS, at Dkt. No. 6 (D.Mass. March 10, 2020).

[14] *See Doe C.L. v. New Prime, Inc.*, No. 1:23-cv-12009-MJJ, at *2 (D.Mass. September 29, 2023). *See also*, *Does 1-6 v. Mills*, No. 1:21-cv-00242-JDL, 2021 WL 4005985, at *2 (D.Me. September 2, 2021) (permitting plaintiffs to proceed under pseudonym while reserving authority to "revisit this issue" at a later stage in the litigation).

under the collateral order **doctrine**[,]"[15] the First Circuit indirectly counsels for a decision on such a type of motion in the earliest stage of a case. Notably, analogizing with the First Circuit's holding the same afore-quoted opinion states, with respect to the third condition of the collateral order doctrine, "for another thing[,] the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order[,]"[16] Appellant argues that the district court's delay (of nearly 2.5 years) to decide the University Defendants' March 30, 2020 motion to modify order, has completely invalidated the application of the new test enacted on August 24, 2022 by this Court; and thus prejudiced not only the public's interests but also the plaintiff's, whereas those of the defendants have remained unscathed. Indeed, we are no longer in the realm of prediction after over 4.5 years of litigation, but no findings of fact have ever been made, not even about the new acts of retaliation alleged by the Appellant in connection with her civil lawsuit that have obliged her to amend her complaint more than once. In addition, the public still does not know the merits of Appellant's complaint, which puts a damper on any public interest that is normally obtained when the new First Circuit's test is applied at the early stages of a lawsuit. Further, militating toward the formulation of an ad hoc test or the revision of the test

---

[15] *See Flagstar Bank, FSB v. Kozak*, No. 4:20-cv-40012-TSH, 2023 WL 3511368, at *2 (D.Mass. May 17, 2023) (quoting *supra Doe v. Mass. Ins. of Tech.*, 46 F.4th at 66).
[16] *See supra Doe v. Mass. Ins. of Tech.*, 46 F.4th at 65.

established a little over a year ago by this Court appears highly questionable whereas this Court has already dedicated consequential time and efforts to devise a test supposedly sufficiently-artful to "capture the vast majority of affected cases."[17]

Here, while the typical three interests at stake can now be directly evaluated,[18] this evaluation will nonetheless never be proper because the potential effect that the use of a pseudonym may have had at this juncture in the litigation, will remain inaccurately assessable, *a fortiori* because the purpose of the pseudonym is to avert the occurrence of the particularized potential harms anticipated from disclosure, when the action debuted. Besides, another type of competing interest has to be added into the balancing inquiry, i.e., that of judicial economy. Further, a ruling on Appellant's complaint's merits may affect the balance of interests to the point of

---

[17] *Id.* at 72.

[18] *See Doe v. Benoit*, 1:19-cv-01253-DLF, 2020 WL 1188557, at *2 (D.Mass. July 27, 2020). In that case, the party wishing anonymity and whose first motion to proceed under a pseudonym was granted ex-parte the same day that it was submitted (*see Doe v. Benoit*, No. 1:19-cv-01253-BAH, 2019 WL 13079193 (D.D.C. Apr. 30, 2019)). However, about 13 months later, i.e., on May 29, 2020, in a minute order, the Court asked the plaintiff to "file, on or before June 12, 2020, a brief addressing the continued justification for the plaintiff to proceed under a pseudonym[.]"In the July 27, 2023 memorandum of order on the plaintiff's June 12, 2020 renewed motion to proceed under pseudonym and to seal, the Court found for instance: "Doe has shown that she can obtain new employment in her field notwithstanding the prior 'insider threat' accusation. *See* Pl.'s Mem. at 19 ('In 2019, Plaintiff attended a job fair and received a conditional job offer on the spot.'); Pl.'s Ex. J ¶¶ 4–6 (explaining Doe 'accepted' this offer and has begun this new position), Dkt. 93-20. And since then, Doe has been cleared of being an 'insider threat,' so any purported risk to future employment is eliminated. As Doe herself acknowledges, she obtained the new job despite her prospective employer's knowledge of the insider threat charge and exoneration. *See id.* ¶¶ 5–6, 10–12." The Court continued: "This case has been pending for over 14 months, and as far as the Court is aware, the case has received little, if any, press attention. *See* Defs.' Opp'n to Pl.'s Renewed Mot. to Proceed Under Pseudonym and Seal ("Defs.' Opp'n") at 16–17, Dkt. 97." (Parenthetically, this case had two counts transferred to the USDC for the District of Massachusetts the same day that the plaintiff's June 12, 2020 renewed motion to proceed under pseudonym and to seal was denied on July 27, 2020, and litigated under the civil action number 1:20-cv-11579-DJC.

sending the anonymity issue before this Court again, should the district court's decision be overruled.[19]

That a district court can exceedingly delay a proceeding to an inacceptable extent, with no apparent valid justification,[20] and subsequently (ab)use this delay, which the district court itself caused, to arbitrarily disregard relevant circumstances by stating that a plaintiff's "original filings are years-old now"[21] can only void the standard recently adopted by this Court that "[a] district court adjudicating a motion to proceed under a pseudonym should balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account."[22] In addition, the passage of time serves not only to hijack this Court's recommendation that the "inquiry should focus upon the extent to which the facts align with one or more of the [four] paradigms"[23] crafted by this Court as of last year, but it heightens the applicable standard from reasonable prediction to nearly beyond reasonable doubt, since the interests at play can be directly evaluated based on the pertinent events which may have been occurring while the litigation is ongoing; that said, without being able to fairly assess the effect,

---

[19] *See Does 1-3 v. Mills*, 39 F.4th at 26 (citing *Does 1-2 v. Hochul*, No. 1:21-cv-05067-AMD-TAM, 2022 WL 836990, at *4 (E.D.N.Y. March 18, 2022) ("[T]he Court[] reserves the authority to reconsider Plaintiffs' anonymity should the case proceed past the motion to dismiss stage.")).

[20] Appellant's upcoming emergency motion to expand the record on appeal intends to expose the facts that support this averment.

[21] *See Doe v. UMass-Amherst et al.*, No. 3:19-cv-30056-MGM, at *2 (D.Mass. September 12. 2022).

[22] *See supra Doe v. Massachusetts Inst. of Tech.*, 46 F.4th at 72.

[23] *Ibid.*

if any, generated by the pseudonymity allowed since the action commenced.

In fact, if the district court's example is to be followed, this Court would then have to define a new test: one where the interests of a plaintiff and the public as well as the potential prejudices to a defendant are now directly weighed even though the ponderation potentially added by the usage of a pseudonym for a long time, cannot be assessed, while also considering a fourth class of interests. Why would any courts of appeals find such a complicated approach sufferable? After all, as long-settled by the Supreme Court in 1936 "every court [has the inherent power] to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[;]" [and] this can best be done [by] call[ing] for the exercise of judgment, which must weigh competing interests and maintain an even balance."[24] "That power is discretionary—it 'calls for the exercise of judgment, which must weigh competing interests' in each particular case."[25,26,27] One of the

[24] *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) also recently quoted by *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 752 (2023) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket.").

[25] *See supra Coinbase, Inc. v. Bielski*, 599 U.S. at 752 (quoting *Landis v. N. Am. Co.*, 299 U.S. at 254-55).

[26] *See supra Does 1-3 v. Mills*, 39 F.4th at 24 (1st Cir. 2022) (quoting *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021) for the factors that courts consider in determining whether to grant a stay: "(1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.") Here, Appellant is not trying to stay a district court's decision pending appeal but merely to delay an appeal in order to expand the record with current new evidence of threats and retaliation that have been happening very recently. Appellant understands that this Court thus needs her prospective emergency motion to expand the record on appeal as fast as possible. Because of the closeness of the latest act of retaliation to Appellant's opening brief filing's deadline, Appellant was unable to have both motions (this one and the other emergency motion) ready for mailing simultaneously, owing to the latest retaliation which had a detrimental and chilling effect that compounded Appellant's already dire and precarious conditions.

[27] Moreover, according to *supra Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*, 996 F.3d at 44, in the stay analysis: "The first two factors of the traditional standard are the most critical. It is not enough that the

obvious justifying reasons for this discretionary power is rightly to avoid the type of situation we are now facing here where everyone but the defendants loses. Appellant is deprived of an opportunity to settle a litigation while benefiting from a pseudonymous protection[28] as "nearly all cases are terminated before trial."[29] The public is robbed of the interest[30] it would normally have in following the unfolding of a case, as the case languishes in clear contravention of Supreme Court guidance;[31] meanwhile their chances of gaining pertinent and accurate information about the case dwindle as time causes witnesses to disappear or their memories erode. Last but not the least, judicial economy suffers as an undue financial burden is added for Appellant—the only party who has been seeking to expedite a decision on the merits—while the defendants have been free to move on with their lives and to drag out the underlying proceedings, aided by the arbitrary redefinition and/or a

---

chance of success on the merits be better than negligible…. By the same token, simply showing some possibility of irreparable injury[] fails to satisfy the second factor." (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted)). Lastly, *supra Nken v. Holder*, 556 U.S. at 427 held that a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

[28] This case, indeed, does not align with the imbalance in settlement negotiations alluded to in Eugene Volokh, The Law of Pseudonymous Litigation, 73 Hastings L.J. 1353, 1381 and n.137 (2022): "While a publicly accused defendant might be eager to settle in order to get its name out of the public eye, a pseudonymous plaintiff might hold out for a larger settlement because they face no such reputational risk."

[29] *Id.* at 1392 and n.179 (2022).

[30] In conformity with the First Circuit's prior opinions, the public access to judicial records and documents is important because it "allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'" *See Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (quoting in turn *In re Cont'l Ill. Secs. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)). Nevertheless, from the public's lack of concern over the district court's long-delayed decisions on this case's merits—apparently unconcerning even to the defendants—it is reasonable to conclude that the public no longer has a strong interest in knowing the Appellant's name.

[31] *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.") (citing *supra Landis v. N. Am. Co.*, 299 U.S. at 254).

misapplication by the district court of standards unequivocally articulated by this Court, causing Appellant to have no other choice than to initiate several appeals.

Of importance is that this Court's review of the primary issue hereinabove discussed is conditioned on another one completely of first impression: Appellant's appeal notice's timeliness where Appellant was induced into filing said notice outside the 30-day limit set forth by the rules of federal civil procedure (to permit this Court to have jurisdiction to hear a potential appeal), by the district court's unlawful grants of several consecutive time extension requests. This supplemental layer of complication, as shown by analogous cases, usually leads to lengthy appeals.[32] The recent new evidence sought to be included in the record by Appellant has the potential for being conclusive in light of *Doe v. Mills*—a case in which this Court deemed that "the circumstances ha[d] changed considerably"[33] for the plaintiffs since they had filed suit ten months earlier, because their identities had been disclosed to the defendants,[34] but that, *inter alia*, "there [was] no evidence of any harm resulting from disclosure at this point in the litigation[;] [and t]he plaintiffs ha[d] provided no current evidence of any potential harm to themselves or evidence on subsidiary issues[.]"[35] By comparison, here, and conflicting with the district

---

[32] *See Doe v. Mass. Institute of Tech.* (about 8 months) and *Doe v. Town of Lisbon* (over a year).

[33] *See supra Does 1-3 v. Mills*, 39 F.4th at 26.

[34] Such a type of change is inapplicable here as the defendants have always known Appellant's identity since the beginning of her lawsuit.

[35] *Ibid.*

court's arbitrary decision to invalidate the most relevant and heavier factors that favor Appellant's continued use of a pseudonym, despite the fact that some[36] of Appellant's filings have become years-old now, threats and retaliation have remained unabated. In the latter regard, albeit rejected by the district court, Appellant has already submitted recent evidence substantiating her assertions of anticipated and actual harms (*see* affidavits attached to Dkt. Nos. 237 and 272), which she now wishes to supplement with new evidence of "non-speculative present harms."[37]

Notwithstanding that anonymity sought by plaintiffs in civil litigations is no longer an issue of first impression for the First Circuit, this same issue viewed against the backdrop contoured above renders necessary the grant by this Court of the precise type of stay applied for herein. Such an allowance will rectify a wrong judgment call on the district court's part by tipping the scales toward fundamental fairness in regard to the balance of courts', counsel's, and litigants' respective time and financial burdens. Therefore, Appellant moves this Court to stay the October 30, 2023 opening briefing deadline, once it has taken stock of Appellant's prospective emergency motion to expand the record on appeal with current new evidence.

Respectfully submitted,
/s/ Jane Doe

---

[36] The district court is evasive on this aspect. Did it include, in the undefined years-old filings it referred to, Appellant's operative complaint (i.e., the third amended version filed on September 13, 2021; Dkt. No. 170), which was just a year-and-a-day-old at the time it issued its September 12, 2022 memorandum of decision (Dkt. No. 218).
[37] *See supra Does 1-3 v. Mills*, 39 F. 4th at 26.

## Certificate of Service

On October 31, 2023, Appellant hereby certifies that on this same day she served the instant amended emergency motion (attached to a motion to substitute) by mailing a printed copy of it via U.S.P.S. regular mail to the Clerk's office of the U.S. Court of Appeals for the First Circuit located at the John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2500, Boston, MA 02210. Subsequently, Appellant emailed copies of the corresponding digital file to the opposing parties' attorneys, namely, Atty. Mark Johnson, Assistant Attorney General Hannah Vail, and Atty. Deborah Ecker.

Respectfully submitted,
/s/ Jane Doe

John Doe
312 North Pleasant St.
Amherst, MA 01003

Retail



UNITED STATES
POSTAL SERVICE

||||||||||||||
02210

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
AMHERST, MA 01002
OCT 31, 2023

$2.31

R2305K136897-11

John Joseph Moakley U. S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02310